UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                      Plaintiff,

  -against-

PETER S. SHAW individually and d/b/a
BROOKLYN VIBES BAR & LOUNGE;
CANDACE S. SHAW, individually and d/b/a
BROOKLYN VIBES BAR & LOUNGE; and
BROOKLYN VIBES INCORPORATED, an
unknown business entity d/b/a BROOKLYN
VIBES BAR & LOUNGE,

                      Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

19-CV-2383 (AMD) (ST)

**TISCIONE, United States Magistrate Judge:**

      Plaintiff J & J Sports Productions, Inc. ("J & J Sports") filed this action against Defendants Peter Shaw and Candace Shaw, both individually and doing business as Brooklyn Vibes Bar & Lounge, and against Brooklyn Vibes Incorporated, doing business as Brooklyn Vibes Bar & Lounge ("Brooklyn Vibes") for allegedly exhibiting a licensed sporting event to its paying guests without paying a commercial licensing fee. *See* Complaint ("Compl."), ECF No. 1. J & J Sports seeks relief on the basis of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553. Compl. ¶ 1. On June 7, 2019, the Clerk of Court entered default after Defendants failed to appear or otherwise defend the action. *See* ECF No. 10. J & J Sports filed a Motion for Default Judgment on August 2, 2019, and that Motion was referred to me by the Honorable Ann M. Donnelly. *See* ECF No. 11 (Motion for Default Judgment); *see also* Order Respectfully Referring Motion (dated Aug. 2, 2019).

      After reviewing the allegations contained in the Complaint and the evidence provided in support of default judgment, I respectfully recommend that the Motion for Default Judgment be

1

GRANTED in part and damages awarded in an amount described more fully below.

### A. Factual Background

J & J Sports is a California-based corporation that sells the rights to view and exhibit television programs featuring sporting events and other entertainment programming. *See* Compl. ¶ 6; Pl.'s Mem. Supp. Def. J. ("Pl.'s Mem."), ECF No. 11-1, at 1. J & J Sports bought the exclusive distribution rights to broadcast the Saul Alvarez v. Amir Khan WBC Championship Fight that aired nationwide on May 7, 2016. Compl. ¶ 19; *see also* Ex. A. to Compl. (License Agreement). For a fee, a commercial establishment—such as a restaurant, bar, or club—could buy the right to exhibit the Alvarez v. Khan Fight. Compl. ¶ 20. The Fight could only be exhibited in a commercial establishment if that establishment had been authorized to do so by J & J Sports. Compl. ¶ 21. The Fight was electronically coded or "scrambled" to protect its unauthorized transmission and, if an establishment paid the requisite fee and gained the right to exhibit the Fight, then J & J Sports would provide the establishment with the requisite electronic decoding equipment or contact the establishment's satellite or cable provider to decode the transmission of the Fight. Compl. ¶ 25. The Fight "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." Compl. ¶ 24.

At the time that the Fight was broadcast, Defendants operated the commercial establishment doing business as Brooklyn Vibes Bar & Lounge located on Flatbush Avenue in Brooklyn, New York. Compl. ¶¶ 7–11. Peter S. Shaw and Candace S. Shaw were identified by the New York State Liquor Authority as Principals for Brooklyn Vibes Incorporated. Compl. ¶ 10.

J & J Sports submitted an affidavit from one of its investigators, Gary Joseph, who observed the Fight being broadcast at Brooklyn Vibes Bar & Lounge on five of its television screens on May 7, 2016. *See* Ex. 5 to Loughlin Decl. ("Joseph Aff."), ECF No. 11-3, at 1. Joseph estimated that Brooklyn Vibes had a capacity of approximately 75 people, and he counted 10 patrons on the night of the Fight. Joseph Aff. at 2. The affidavit contained a description of

the establishment and a brief description of Joseph's observations of the television program. Joseph Aff. at 1. Joseph stated that he did not pay a cover charge to enter Brooklyn Vibes. Joseph Aff. at 1.

Brooklyn Vibes was not licensed to broadcast the Fight on May 7, 2016. *See* Affidavit of Joseph Gagliardi, President of J & J Sports ("Gagliardi Aff."), ECF No. 11-2, ¶ 3; *see also* Ex. 1 to Gagliardi Aff. (Closed Circuit Television License Agreement).

J & J Sports filed its Complaint against Defendants on April 24, 2019. *See* ECF No. 1. On June 5, 2019, after the time for Defendants to appear or otherwise defend had expired, J & J Sports requested a certificate of default from the Clerk of the Court. *See* ECF No. 9. Default was entered on June 7, 2019. J & J Sports now moves the Court for default judgment.

**B. Applicable Law**

A defending party who fails to adequately respond to a complaint risks default. Courts are directed to engage in a two-step process for the entry of a judgment against a party who fails to defend: first, the Clerk of Court enters default, and second, a judgment is entered on the default. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Rule 55(a) of the Federal Rule of Civil Procedure sets forth the first step as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). While a "typical" default is entered "because a defendant failed to file a timely answer[,] . . . a district court is also empowered to enter a default against a defendant that has failed to 'otherwise defend.'" *Mickalis Pawn Shop*, 645 F.3d at 129 (citing Fed. R. Civ. P. 55(a)) (citation and bracket omitted).

The second step is the entry of default judgment. In this step, the court "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled . . . ." *Id.* at 128. Following the clerk's entry of default, a court considers as true all factual allegations in the complaint relating to liability. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found.*

*Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). But the court still must determine whether the factual allegations, taken as true, establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (following entry of default, the court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

By entry of default, the defaulting party does not concede liability, as stated above, nor does the defaulting party admit the plaintiff's factual allegations with respect to the amount of damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. After finding liability, a court must conduct an inquiry to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted); *see United States v. Myers*, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *J & J Sports Prods. v. Emily Bar Rest. Inc.*, No. 15-CV-6499 (RJD), 2016 WL 6495366, at *2 (Sept. 27, 2016) (citing Fed. R. Civ. P. 55(b)(2) and *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted by*, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016).

## C. Analysis

### 1. Liability

J & J Sports seeks a default judgment finding Defendants liable for violating 47 U.S.C. § 605, which applies to radio and satellite signals, and 47 U.S.C. § 553, which applies to cable signals. *Int'l Cablevision v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996); *see J&J Sports Prods. v.*

4

*291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 471 (E.D.N.Y. 2009).  Where a plaintiff alleges that sections 553 and 605 are violated by the same conduct, however, a plaintiff may ordinarily recover under only one statute.  *Int'l Cablevision*, 997 F.2d at 1008–09; *see 291 Bar & Lounge*, 648 F. Supp. 2d at 417.  J & J Sports has elected to recover damages under section 605 rather than section 553.  *See* Pl.'s Mem. at 4.  Accordingly, this Court assesses liability and damages under section 605.

Section 605 states, in pertinent part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."  47 U.S.C. § 605(a).  This Court deems the following well-pleaded facts to be admitted (given entry of default): J & J Sports had the exclusive rights to broadcast the Alvarez v. Khan Fight (Compl. ¶ 19); Brooklyn Vibes had not entered into a sublicensing agreement with J & J Sports to broadcast the Fight (Compl. ¶ 28); the Fight was broadcast in a "scrambled" or electronically coded form (Compl. ¶ 25); the Fight originated as a satellite communication (Compl. ¶ 24) and; Brooklyn Vibes broadcasted the Alvarez v. Khan Fight on May 7, 2016 (Compl. ¶ 26).  Based on that factual information, this Court finds that Brooklyn Vibes was "not authorized" to broadcast the Alvarez v. Khan Fight but "intercept[ed the] radio communication" and "publish[ed]" the contents of that communication to its patrons that night.

Courts have routinely found similar allegations sufficient to state a claim for relief under section 605 of the FCA.  *See, e.g.*, *J & J Sports Prods. v. Boyd*, No. 17-CV-6822 (ENV) (AYS), 2018 WL 7113870, at *2 (Nov. 16, 2018), *adopted by*, 2019 WL 316704 (E.D.N.Y. Jan. 24, 2019) (finding § 605 liability where plaintiff alleged that it held exclusive rights to distribute the program, defendant did not obtain authorized access to display the program, and plaintiff's investigator personally observed the airing of the program); *J & J Sports Prods. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG) (PK), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (finding same and collecting cases).  This Court finds that Brooklyn Vibes Incorporated, doing business as Brooklyn Vibes Bar & Lounge, is liable for violating section 605(a) of the FCA.

5

J & J Sports also seeks default judgment against Peter S. Shaw and Candace S. Shaw in their individual capacity as principals of Brooklyn Vibes. *See* Mot. Def. J., ECF No. 11; *but see* Mem. Supp. Def. J., ECF No. 11-1 (omitting any argument in favor of individual liability). After reviewing the well-pleaded allegations in the Complaint, this Court finds no basis for finding individual liability in this case.

A corporation's officers and directors may be held vicariously liable for the corporation's illegal activity if evidence establishes that officers and directors authorized the violations and had a "right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of the copyrighted materials." *J & J Sports Prods., Inc. v. Three My Corp.*, No. 17-CV-3383 (NGG) (JO), 2018 WL 4522097, at *2 (Sept. 5, 2018) (citation and brackets omitted), *adopted by*, 2018 WL 4561460 (E.D.N.Y. Sept. 24, 2018). A plaintiff fails to meet his or her burden of establishing vicarious liability by merely restating the legal standard without more factual information. *See id.* (citing *Corbin v. Wilson*, 10-CV-3156 (NGG) (RER), 2011 WL 4374213, *3 (E.D.N.Y. Aug. 26, 2011)). A plaintiff is required to set forth some *specific* evidence to demonstrate the individual defendant's supervision of the infringing broadcast and his or her direct financial interest in it. *See J & J Sports Prods., Inc. v. Classico Bar Inc.*, No. 16-CV-5639 (ADS) (SIL), 2018 WL 2022166, at *3 (Feb. 13, 2018) (finding that allegations fail to "identify any actions the Individual Defendants specifically took" and the Complaint "fails to establish that they had an 'obvious and direct financial interest' in the infringement"), *adopted by*, 2018 WL 1168582 (E.D.N.Y. Mar. 6, 2018).

In this case, J & J Sports alleged that "Defendants Peter S. Shaw and Candace S. Shaw specifically directed the employees of Brooklyn Vibes Bar & Lounge to unlawfully intercept, receive and broadcast Plaintiff's *Program* at Brooklyn Vibes Bar & Lounge or intentionally intercepted, and/or published the *Program* at Brooklyn Vibes Bar & Lounge themselves." Compl. ¶ 14. Further, Plaintiff alleges that "[t]he actions of the employees of Brooklyn Vibes Bar & Lounge are imputable to Defendants Peter S. Shaw and Candace S. Shaw by virtue of them [*sic*] acknowledged responsibility for the operation of Brooklyn Vibes Bar & Lounge."

6

Compl. ¶ 14. Plaintiff further alleges that both individual Defendants are the Principals of Brooklyn Vibes and are the sole individuals identified on the liquor license. Compl. ¶ 15.

Plaintiff's allegations fail to meet the standard for finding individual liability. Plaintiff merely parrots language that is found in the caselaw and does not list any *specific* actions taken by the individuals on the night of the Fight. Plaintiff's allegations do not permit the Court to infer that either individual Defendant was positioned to supervise the infringing broadcast or directly participated in the violation. *See Classico Bar Inc.*, 2018 WL 2022166, at *3.

Furthermore, even if Plaintiff's allegations established either supervision or direct involvement by the individual Defendants, the Complaint fails to establish an "obvious and direct financial interest" in the infringement. The investigator stated that he did not pay a cover charge and observed approximately 10 patrons despite the bar having a capacity of 75. *Compare J & J Sports Prods. v. McAdam*, No. 14-CV-5461 (PKC) (CLP), 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015) (finding financial interest where establishment was at or over capacity with approximately 100 patrons and charged $20.00 cover), *with J & J Sports Prods. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 18-CV-2622 (NGG) (RML), 2018 WL 6985009, at *4 (E.D.N.Y. Nov. 29, 2018) (finding no financial interest where establishment had capacity of 75 but only 26 patrons in attendance and investigator reported no cover charge), *adopted by*, 2018 WL 6716095 (E.D.N.Y. Dec. 20, 2018) *and J & J Sports Prods., Inc. v. Brown*, No. 18-CV-2489 (RJD) (ST), 2019 WL 612225, at *3 (Jan. 10, 2019) (finding no financial interest where establishment had maximum capacity of 85 but only 50 patrons in attendance and investigator reported no cover charge), *adopted by*, 2019 WL 591544 (E.D.N.Y. Feb. 13, 2019). Accordingly, this Court finds that Plaintiff has not established liability against Peter Shaw or Candace Shaw.

2. *Damages*

Because J & J Sports has established liability against Brooklyn Vibes, it is entitled to damages. In the Complaint, J & J Sports seeks statutory damages in the amount of $110,000 for willful violations of section 605. *See* Compl. (Prayer for Relief). In its present Motion,

7

however, J & J Sports requests statutory damages in the amount of $6,600 and enhanced damages in the amount of $19,800.00. *See* Pl.'s Appl. Def. J., ECF No. 11, at 3. It also seeks attorneys' fees and costs. *See* Compl. (Prayer for Relief); Pl.'s Mem. at 10. J & J Sports requests that it be granted thirty days from the date of an Order on the Motion in which to submit evidence of costs and attorneys' fees. *See* Pl.'s Mem. at 10. I find that damages can be determined based on the detailed affidavits submitted by J & J Sports. *See Emily Bar Rest.*, 2016 WL 6495366, at *2.

A plaintiff who establishes liability under the FCA may elect for either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). J & J Sports did not submit evidence of actual damages and instead requests statutory damages. A party may recover "an award of statutory damages" in an amount "of not less than $1,000" and not more than "$10,000, as the court considers just[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II).

Courts in this Circuit generally award statutory damages under section 605 based on the either a "flat fee method" or the "per-person method."

> The "flat fee" method considers the amount that the defendant would have paid for authorization to broadcast the Event—here, plaintiff's licensing fee. Under the per-person method, damages are equal to the amount the patrons would have collectively paid to view the Event at home. "[T]he higher of the two amounts is generally awarded."

*J & J Sports Prods. v. Crazy Willy's Bar, Lounge & Rest.*, No. 17-CV-1192 (NGG) (RML), 2018 WL 3742701, at *3 (June 28, 2018) (citations omitted), *adopted by*, 2018 WL 3629595 (E.D.N.Y. July 31, 2018). J & J Sports has not submitted evidence of a per-person licensing fee.

Instead of the "flat fee" or "per-person" methods of calculating damages, J & J Sports requests that this Court adopt the approach used in *J & J Sports Prods. v. McCausland*, 10-CV-1564, 2012 WL 113786, at *3 (S.D. Ind. Jan. 13, 2012). *See* Pl.'s Mem. at 9. In that case, the court awarded $10,000 in statutory damages and $30,000 in enhanced damages. *See McCausland*, 2012 WL 113786, at *3–4. The court based its award on "the need to send a deterrent signal to [the defendant bar/restaurant] and other would-be offenders . . . ." *Id.* at *4. J

8

& J Sports asks this Court to deviate from the ordinary approach used by courts in this Circuit and impose treble damages in the amount of $6,600, which is equal to three times the original licensing fee of $2,200 that Brooklyn Vibes would have had to pay to lawfully exhibit the Fight. *See* Pl.'s Mem. at 8; Gagliardi Aff. ¶ 8 (stating that the commercial licensing fee for Brooklyn Vibes was $2,200). J & J Sports suggests that a damages award that imposes three times the licensing fee is "in keeping with the purpose of the piracy statutes" and, anything less, "fails to compensate Plaintiff adequately[,] conflates two separate provisions of 47 U.S.C. § 605 . . . [, and] create[s] a perverse incentive for an individual to attempt to break the law." Pl.'s Mem. at 8–9.

Consistent with recent decisions in this Circuit, this Court declines J & J Sports' request to deviate from the well-established practice in this District. *See J & J Sports Prods. v. Orellana*, No. 18-CV-2052 (KAM) (VMS), 2019 WL 1177719, at *5 (E.D.N.Y. Mar. 13, 2019) (declining invitation to adopt *McCausland* and impose treble damages); *see also J & J Sports Prods. v. Inga*, No. 18-CV-2542 (PKC) (RLM), 2019 WL 1320278, at *6 (E.D.N.Y. Mar. 22, 2019) (same); *J & J Sports Prods. v. Guncay*, No. 18-CV-2097 (FB) (RML), 2018 WL 6313210, at *3 (Oct. 17, 2018) (same), *adopted by*, 2018 WL 6308773 (E.D.N.Y. Dec. 3, 2018). In keeping with those decisions, this Court declines the request for treble damages and instead recommends calculating damages using the statutory "flat fee" approach that is equal to the amount charged for the sublicense. Accordingly, this Court recommends that statutory damages be awarded in the amount of $2,200.

A court may award enhanced damages if it finds that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). Courts routinely find, "as a matter of law, the broadcast of an event without authorization is a deliberate act, and thus establishes willfulness." *McAdam*, 2015 WL 8483362, at *5 (brackets, internal quotation marks, and citations omitted); *see J & J Sports Prods. v. Morocho*, No. 18-CV-2303 (AMD) (RML), 2019 WL 1339198, at *6 (Feb. 27, 2019) ("The fact that [plaintiff] broadcast the Program without authorization establishes the willfulness

9

of its conduct.") (collecting cases), *adopted by*, 2019 WL 1333245 (E.D.N.Y. Mar. 25, 2019). J & J Sports submitted evidence regarding its encryption technology that prevents its signal from being "mistakenly, innocently or accidentally intercepted." Gagliardi Aff. ¶ 9; *see id.* ¶¶ 10–11. As such, this Court finds that Brooklyn Vibes acted willfully when it broadcast the Fight on May 7, 2016 without the authorization of J & J Sports.

To determine whether Brooklyn Vibes' willful conduct warrants an award of enhanced damages, this Court must evaluate five factors: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *J & J Sports Prods. v. Big Daddy's Theme Palace, Inc.*, No. 14-CV-2765 (JG) (JMA), 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015) (citations omitted). "Courts typically fix the amount of enhanced damages as a multiple of the basic statutory damages award. The multiples most commonly used by the Eastern District of New York are either two or three times the basic statutory damages." *J & J Sports Prods. v. Onyx Dreams Inc.*, No. 12-CV-5355 (SLT) (LB), 2013 WL 6192546, at *7 (E.D.N.Y. Nov. 26, 2013) (citation omitted).

None of the factors favoring enhanced damages are present in this case. J & J Sports has not complained that Brooklyn Vibes is a repeat offender or that Brooklyn Vibes made significant revenue on the night of the Fight. Neither has J & J Sports put forth any evidence that Brooklyn Vibes advertised the Fight or charged a cover charge or premiums on menu items. J & J Sports suffered damages in the amount of the sublicensing fee—namely, $2,200—which is not necessarily insignificant, but those damages are accounted for in the statutory damages award.

"However, even in cases such as this one where none of these five factors militates in favor of awarding enhanced damages, courts in our Circuit have awarded 'enhanced damages as a deterrent to the problem of persistent signal piracy and to compensate Plaintiff for intangible losses such as business investment, business opportunities, reputation, and goodwill.'" *J & J Sports Prods. v. Brown*, No. 18-CV-2489 (RJD) (ST), 2019 WL 612225, at *5 (Jan. 10, 2019)

(citing cases), *adopted by*, 2019 WL 591544 (E.D.N.Y. Feb. 13, 2019). This Court finds that merely awarding J & J Sports the amount of the sublicensing fee as statutory damages would insufficiently deter future signal piracy and insufficiently compensate J & J Sports for these intangible losses. This Court therefore recommends that J & J Sports be awarded enhanced damages in the amount of $2,200, which is equal to the award of statutory damages recommended by this Court, for a total award of $4,400.

    3. *Pre- and Post-Judgment Interest*

In addition to statutory and enhanced damages, J & J Sports requests pre- and post-judgment interest at the federal statutory rate. Appl. for Def. J. at 3. The FCA does not specifically provide for pre-judgment interest. Despite the lack of express statutory authorization, the Second Circuit has recognized that District Courts may award pre-judgment interest where it is "fair, equitable and necessary to compensate the wronged party fully." *Garden City Boxing Club, Inc. v. Rojas*, No. 05-CV-1047 (DGT), 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (quoting *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 836 (2d Cir. 1992)). Courts in this District generally refuse requests for pre-judgment interest in FCA cases on the basis that pre-judgment interest does not serve to compensate the wronged party, but rather only serves to punish the violator. *See Big Daddy's Theme Palace*, 2015 WL 58606, at *5 (citing cases); *J & J Sports Prods. v. Hot Shots, Inc.*, No. CV-09-1884 (FB) (SMG), 2010 WL 3522809, at *3 (Apr. 27, 2010) (collecting cases), *adopted by*, 2010 WL 3523003 (E.D.N.Y. Sept. 2, 2010); *see also J & J Sports Prod. v. Leon*, No. 18-CV-2103 (PKC) (RML), 2019 WL 1320277, at *7 (E.D.N.Y. Mar. 22, 2019). As such, I recommend following these cases and denying J & J Sports' request for pre-judgment interest.

No such barrier exists for awarding post-judgment interest in FCA cases. *See Morocho*, 2019 WL 1339198, at *7 (awarding post-judgment interest at the federal statutory rate and citing cases); *Leon*, 2019 WL 1320277, at *7 (same); *Inga*, 2019 WL 1320278, at *8 (same). I recommend awarding post-judgment interest at the federal statutory rate as provided by 28 U.S.C. § 1961.

*4. Costs and Attorneys' Fees*

The FCA requires courts to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). J & J Sports requests thirty days from the date of an Order on this Motion in which to file evidence of the amount of costs and fees. The Court finds that the request for thirty days is reasonable. Therefore, this Court recommends that J & J Sports be granted leave to file a motion for attorneys' fees and costs by thirty days from the date of an Order on the present Motion.

**D. Conclusion**

This Court respectfully recommends:

(1) J & J Sports' Motion for Default Judgment be GRANTED against Brooklyn Vibes but DENIED against Peter Shaw and Candace Shaw;

(2) J & J Sports be awarded damages in the amount of $4,400, consisting of $2,200 in statutory damages and $2,200 in enhanced damages;

(3) J & J Sports be awarded post-judgment interest at the federal statutory rate but denied pre-judgment interest; and

(4) J & J Sports be permitted to file a motion for costs and attorneys' fees no later than thirty (30) days after the entry of an Order on this Motion.

Counsel for J & J Sports is directed to serve a copy of this Report and Recommendation on all Defendants at their respective last known addresses and file proof of service with the Court within five (5) business days of the date of this R&R.

**E. Objections to this Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                              /s/
                                     Steven L. Tiscione
                                     United States Magistrate Judge
                                     Eastern District of New York

Dated: Brooklyn, New York
       February 12, 2020